IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **DONALD BELL; KATRINA BELL,** | * |
| Plaintiffs, | * |
| v. | *   Civil Action No. 2:05-cv-658-M |
| **TRAVELERS PROPERTY CASUALTY INSURANCE COMPANY,** | * |
| Defendants, | * |

## PLAINTIFFS' STATEMENT AND BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COME NOW the Plaintiffs, Mr. And Mrs. Bell, in the above-styled action pursuant to Rule 56 of the Federal Rules of Civil Procedure, and hereby file this their Statement and Brief in Opposition to Defendant Standard Fire Insurance Company's (hereinafter referred to as "Standard Fire") Motion for Summary Judgment. The Bells respectfully move this Court to enter an order denying Defendant's aforesaid motion because there are genuine issues of material fact. When viewed in a light most favorable to the Bells, the facts establish that Defendant Standard Fire breached its contract with the Bells by denying their homeowner's claim in bad faith. As a result, the Bells have been, and continue to be, legally damaged.

This Statement and Brief in Opposition to the Defendants' Motion for Summary Judgment is supported by a Narrative Summary of Undisputed Facts, Affidavit of Don Bell, (attached hereto as Exhibit "A"); Affidavit of Katrina Bell, (attached as Exhibit "B"); Insurance Policy issued by Standard Fire, (attached as Exhibit "C"); estimate from D.S. Land, (attached hereto as Exhibit "D"); estimate from Schofield Contracting,

(attached as Exhibit "E"); Cain and Associates detailed engineering report, (attached hereto as Exhibit "F"); estimate from Mr. Douglas Free, (attached hereto as Exhibit "G"); estimate from Antique Wood, (attached hereto as Exhibit "H"); estimate from Appalachian Woods, LLC; (attached hereto as Exhibit "I"), Affidavit of Mr. David Gibbs (attached hereto as Exhibit "J"); the deposition of William P. Sanders, (Sanders Depo. pgs 31-32, 44, 62-68, 72, 82-83, 89 attached hereto as Exhibit "K").

## Standard of Review

On a motion for summary judgment, the movant has the burden to make a prima facie showing that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. F.R.C.P. 56 (c). Until the moving party has made such a showing, the burden does not shift to the opposing party to establish a genuine issue of material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). If the defendant makes a prima facie showing, the burden then shifts to the plaintiff to present evidence of the existence of a genuine issue of material facts. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a Motion for Summary Judgment, the court must review the facts in the light most favorable to the non-movant and must resolve all reasonable doubts against the movant. F.R.C.P. 56(c). When viewed in a light most favorable to the Plaintiffs, there exist genuine issues of material fact, thus precluding judgment as a matter of law.

## Narrative Summary of Undisputed Facts

Mr. and Mrs. Bell purchased a 150-year-old wooden home located in Furman, Alabama, at 9030 County Road 59 back in 2001 and began to completely restore the home. (Don Bell Affidavit, Exhibit "A");(Katrina Bell Affidavit, Exhibit "B"). After

completing the restoration, the Bells purchased homeowner's insurance coverage from Defendant Standard Fire to cover the home and contents in case of a loss. (Exhibit "A"); (Exhibit "B");(Insurance Policy, Exhibit "C"). On or about September 14, 2004, Hurricane Ivan damaged portions of the Bells' home and contents and the Bells reported the loss to Defendant Standard Fire the very next day via telephone. (Exhibit "A"); (Exhibit "B"). The Bells were instructed by Defendant Standard Fire to secure the damaged areas to prevent further damage until repairs could be made, which the Bells did. (Exhibit "A");(Exhibit "B"). On October 2, 2004, an adjuster employed by Insurance Claims Adjusters ("ICA"), acting on behalf of Defendant Standard Fire, inspected the damages caused to the Bells' home by Hurricane Ivan. (Exhibit "A");(Exhibit "B"). While inspecting the home, the ICA adjuster instructed the Bells to obtain repair estimates or "bids" from contractors regarding the damage caused by Hurricane Ivan. (Exhibit "A");(Exhibit "B"). The Bells informed the ICA adjuster that they had already obtained one repair estimate and were in the process of obtaining a second. (Exhibit "A");(Exhibit "B"). The Bells gave the ICA adjuster the repair estimate they had already obtained and the ICA adjuster instructed the Bells to forward the second repair estimate to him once received. (Exhibit "A");(Exhibit "B");(Exhibit "D"). On or about October 14, 2004, the Bells obtained the second requested repair estimate or "bid" and sent the same to the ICA adjuster as instructed. (Exhibit "A");(Exhibit "B");(Exhibit "E"). On or about November 23, 2004, the Bells were informed by Defendant Standard Fire that the ICA adjuster handling their claim had been in a car accident and all of their submitted claim information had been lost. (Exhibit "A");(Exhibit "B"). The Bells were instructed to re-submit their repair estimates to Defendant Standard Fire, which they did.

(Exhibit "A");(Exhibit "B'). On November 28. 2004, another ICA adjuster inspected the Bells' home and informed the Bells that Defendant Standard Fire needed to have their home and foundation inspected by an engineering firm. (Exhibit "A");(Exhibit "B"). The Bells agreed, and on December 7, 2004, the engineering firm of Cain & Associates inspected the home and foundation and completed a detailed engineering report and provided a copy of the same to both Defendant Standard Fire and the Bells. (Exhibit "A");(Exhibit "B");(Report, Exhibit "F"). The Bells continued to submit additional independent repair estimates to Defendant Standard Fire. (Exhibit "A")(Exhibit "B");(Exhibit "G");(Exhibit "H");(Exhibit "I");. On or about December 17, 2004, the ICA adjuster informed the Bells that their claim had been approved by Defendant Standard Fire and that they would be receiving approximately $200,000.00 in total benefits, which was the amount listed on the ICA adjuster's report as well as the Bells' previously submitted repair estimates. (Exhibit "A");(Exhibit "B"). The Bells were pleased and began repairing their home. (Exhibit "A");(Exhibit "B").

However, instead of receiving the $200,000.00 benefit payment as promised, on December 22, 2004, the Bells were contacted by Mr. David Gibbs, an employee of Defendant Standard Fire, and informed that he was now in charge of their claim and needed to personally re-inspect their home with another engineering firm and contractor of his choosing because he didn't believe the cupping and warping of the boards within the home were caused by Hurricane Ivan. (Exhibit "A");(Exhibit "B"). The Bells informed Mr. Gibbs that all of the reported damage was caused by Hurricane Ivan because the boards were not cupped or warped before Hurricane Ivan, that the Bells were in their home during the storm, that the Bells witnessed the water coming in from the

storm and soaking the damaged boards, that they witnessed the water standing in their home after the storm, and witnessed the boards cup and warp after they began to dry. (Exhibit "A"); (Exhibit "B"). The Bells also reminded Mr. Gibbs that the other boards in the house that did not get wet during the storm have not cupped or warped. (Exhibit "A");(Exhibit "B"). The Bells also informed Mr. Gibbs that six independent contractors and an independent engineering firm had already inspected their home and had taken pictures and that Standard Fire had already approved their claim. (Exhibit "A");(Exhibit "B"). Mr. Gibbs insisted that he be allowed to re-inspect the Bells' home with a contractor and engineering firm of his choosing. (Exhibit "A");(Exhibit "B"). On December 26, 2004, Mr. Gibbs's contractor re-inspected the Bells' home. (Exhibit "A");(Exhibit "B"). On December 27, 2004, Mr. Gibbs inspected the Bells' home himself. (Exhibit "A");(Exhibit "B"). On January 19, 2005, Mr. Gibbs, along with the engineering firm he personally selected and his contractor all re-inspected the Bells' home together.[1] (Exhibit "A");(Exhibit "B"). On February 1, 2005, the Bells received a check for $6,908.13 for the damage to their home and other damaged structures. (Exhibit "A");(Exhibit "B"). The Bells called Mr. Gibbs and informed him that the check for the damages to their home was grossly inadequate and requested additional payment. (Exhibit "A");(Exhibit "B"). The Bells reminded Mr. Gibbs that the estimated costs just to repair the damaged foundation was $6,500.00. (Exhibit "A"); (Exhibit "B"). Mr. Gibbs informed the Bells that their claim was closed and stated that the Bells would not be receiving any additional payments from Defendant Standard Fire. (Exhibit "A"); Exhibit "B"). Mr. Gibbs informed the Bells that based upon his review of his recently

---

[1] Why would Mr. Gibbs and the contractor need to attend the inspection by the engineering firm if a fair and objective inspection was desired?

obtained engineering report, only part of the Bells' claim was covered because most of the damage to their home was caused by upgrades in the heating and cooling units, not Hurricane Ivan.[2] (Exhibit "A");(Exhibit "B").  In response, the Bells asked Mr. Gibbs if had given any consideration to the previously submitted engineering report and repair estimates in reaching his decision. (Exhibit "A"); (Exhibit "B"). Mr. Gibbs replied that he had not because they were all irrelevant.  (Exhibit "A");(Exhibit "B").  This is corroborated by Mr. Gibbs's own affidavit that was used in support of Defendant Standard Fire's Motion for Summary Judgment. (Mr. Gibbs' Affidavit, Exhibit "J").  Mr. Gibbs reminded the Bells that he was now in charge of their claim and threatened that if they complained, he would come out to their home himself and collect all of their personal property they had listed as damaged because it now belonged to Defendant Standard Fire. (Exhibit "A");(Exhibit "B").

The foregoing undisputed evidence suggests that Defendant Standard Fire created its own debatable reason in the instant case to deny the Bells' properly submitted claim for benefits, and when the Bells complained, they were threatened with retaliation.

---

[2] Please note that Mr. Gibbs' previous "belief" regarding the cause of the damage is now the "belief" of the engineering firm he hired and accompanied to the inspection.  However, please specifically note that the engineering report did not reach the same conclusion Mr. Gibbs reached regarding the damages being caused by upgrades in the heating and cooling units.  The engineering report simply states that the engineer "believes" the damages were caused by differences in temperatures resulting from the upgrades in the heating and cooling units.  No follow up scientific studies, inspections, or reports were done to conclusively state to a reasonable degree of certainty that the disputed damage was caused by anything other than Hurricane Ivan.  In addition, it must be noted that Mr. Gibbs reached his conclusion knowing that the Bells were in their home during the storm, that they saw the water coming in from the roof and soak the damaged boards, that they witnessed the boards cup and warp after they began to dry, and that none of the other boards in the Bells' home have cupped or warped that were not soaked by the water from Hurricane Ivan.  Please also note that Mr. Gibbs' engineering report did not even address the foundation damage caused by the home being lifted and slammed back down by Hurricane Ivan.  As stated in the body of this Opposition, the Bells provided damage repair estimates to Standard Fire regarding the foundation damage in the amount of $6,500.00 back in 2004.  However, to date, Standard Fire has not provided any explanation as to why this amount has not been paid.  How could the damage to the foundation have possibly been caused by the upgrades to the heating and cooling units?

Plaintiffs' counsel believes that Defendant Standard Fire has claims procedures in place that actually encourage the exact conduct set forth above. This belief is corroborated by the facts of an almost identical case that was pending in the Circuit Court for Montgomery County, Alabama, styled <u>William P. Sanders, et al., v. Standard Fire Insurance Company, et al</u>., CV-04-2928. In the <u>Sanders</u> case, Defendant Standard Fire also originally sent an adjuster from ICA out to adjust the Sanders' loss as a result of damage sustained during Hurricane Ivan, just as it did in the instant case. (William Sanders Deposition, pgs 31-32, Exhibit "K"). The ICA adjuster in the <u>Sanders</u> case completed his investigation and informed the Sanders that their claim for $30,000.00 had been approved, and that they would be receiving the check soon thereafter. (William Sanders Deposition, pg. 44, Exhibit "K"). However, instead of sending the $30,000.00 payment as promised, Defendant Standard Fire fired the ICA adjuster and had the claim re-assigned to another adjuster, just as it did in the instant case. (William Sanders Deposition pgs. 62-68, Exhibit "K"). The newly assigned adjuster in the <u>Sanders</u> case made a point to inform the Sanders that he was now the adjuster that was in charge of their claim instead of the original ICA adjuster, just as Mr. Gibbs informed the Bells in the instant case. (William Sanders Deposition, pg. 72, Exhibit "K"). The newly assigned adjuster in the <u>Sanders</u> case inspected the property himself, just as Mr. Gibbs did in the instant case. (William Sanders Deposition, pg. 62-68, Exhibit "K). The newly assigned adjuster in the <u>Sanders</u> case significantly reduced the amount of benefits that would be paid to the Sanders on their claim for homeowner benefits (from $30,000.00 to just $2,800.00), just as Mr. Gibbs reduced the amount payable to the Bells in the instant case. (William Sanders Deposition, pgs. 82-83, Exhibit "K"). The newly assigned adjuster's

decision in the <u>Sanders</u> case to reduce the benefits paid was based entirely upon his own inspection, and he deliberately chose to ignore all previously submitted claim information, just as Mr. Gibbs chose to do in the instant case. <u>Id</u>. When the Sanders objected and requested additional benefits, the newly assigned adjuster threatened them (actually physically assaulted Mrs. Sanders) and told them they would accept the reduced amount offered, just as Mr. Gibbs did in the instant case. (William Sanders Deposition, pg. 89, Exhibit "K").

## **Argument**

### *Breach of Contract/Bad Faith*

#### *Breach of Contract*

To establish a cause of action for bad faith, it must be first established that an insurance contract existed between the parties and that there has been a breach thereof. A party can establish a breach of that contract by showing (1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's non-performance, and (4) damages. <u>State Farm v. Slade</u>, 747 So.2d 293, 302 (Ala.1999); citing <u>Southern Medical Health Systems Inc. v. Vaughn</u>, 669 So.2d 98, 99 (Ala.1995). In the instant case, it is undisputed that a homeowner's insurance contract existed between the Bells and Defendant Standard Fire. Defendant Standard Fire simply denies that it breached said homeowner's insurance contract by refusing to pay the amount submitted the Bells because it claims that the upgraded heating and cooling unit caused the damages to the Bells' home, not Hurricane Ivan. It is undisputed that the $6,500.00 to repair the damage to the Bells' home's foundation should have been paid and wasn't. There has been absolutely no explanation or documentation provided as to

why Standard Fire has not paid this claim. Thus, the sole issue for this Court to decide is whether the evidence submitted by the Bells is sufficient to require a factual determination by a jury as to the causation of damages to their home.

As stated above, before the storms of Hurricane Ivan, the Bells had completely restored their wooden home to its original condition and the boards and wood were not cupped or warped or damaged in any way. (Exhibit "A");(Exhibit "B"). As also stated above, the Bells were in their home during the storms of Hurricane Ivan and witnessed the water from the storms soak the now damaged wood and boards. Id. The Bells also witnessed the water standing in their home after the storms passed, and witnessed the wood and boards cup and warp after they began to dry. Id. It is also significant to note that other identical boards inside the home that did not get wet during the storm have not cupped or warped. Id. In addition, six independent contractors and an independent engineering firm inspected the Bells' home for damages, took pictures and submitted the same to Standard Fire and Standard Fire approved their claim. Id. It was only after the Bells' claim was assigned to Mr. Gibbs that their claim was denied, and said denial was based upon a single engineering report to the exclusion of all previously submitted documentation and information. (See Gibbs Own Affidavit, Exhibit "J"). It is significant to note that Mr. Gibbs hired the engineering firm providing the report after he had voiced his belief to the Bells that the damage had not been caused by Hurricane Ivan as they claimed. It is also significant to note that Mr. Gibbs accompanied the engineer providing the aforesaid report to the Bells home and stayed with him during his inspection. What's more, the engineering report does not come to the same conclusions Mr. Gibbs does regarding the causation of the damages. The engineering report simply states that the

inspecting engineer "believes" the damages were ultimately caused by the upgraded heating and cooling unit. No follow up tests were performed by anyone to substantiate this unfounded "belief" and nothing was stated within the report that this "belief" was within a reasonable degree of any type of certainty..

Based upon the foregoing, the Bells have provided substantial evidence that Standard Fire breached its contract with them. Therefore, summary judgment as to the Bells' breach of contract claim is due to be denied.

*Bad Faith*

Alabama has recognized two types of bad faith failure to pay insurance benefits cases; the "normal" bad faith case, and the "abnormal" bad faith case. See National Insurance Ass'n v. Sockwell, 2002 WL 399041, pg 16; Aetna Life Ins. Co. v. Lavoie, 505 So.2d 1050 (Ala. 1987); Blackburn v. Fidelity & Deposit Co., 667 so.2d 661, 669 (Ala. 1995). The instant case is an "abnormal" bad faith type of case. "Abnormal" bad faith cases have been recognized by the Supreme Court of Alabama in instances where the plaintiff has produced substantial evidence that the insurer (1) intentionally or recklessly failed to investigate the plaintiff's claim; (2) intentionally or recklessly failed to properly subject the plaintiff's claim to a cognitive evaluation or review; (3) created its own debatable reason for denying the plaintiff's claim; or (4) relied on an ambiguous portion of the policy as a lawful basis to deny the plaintiff's claim. National Insurance Ass'n v. Sockwell, 2002 WL 399041, pg. 16.

The evidence set forth above indicates that Standard Fire created its own reason to deny the Bells' claim for benefits by basing its decision upon an engineering report generated under the aforementioned circumstances to the exclusion of all previously

submitted documentation and information. This is corroborated by Mr. Gibbs's own affidavit that was used in support of Defendant Standard Fire's Motion for Summary Judgment. (Mr. Gibbs' Affidavit, Exhibit "J"). The information excluded and not considered included the fact that Bells had informed Mr. Gibbs that they had completely restored their wooden home to its original condition and the boards and wood were not cupped or warped or damaged in any way before the storm. The information not considered included the fact that the Bells were in their home during the storm and witnessed the water actually soak the now damaged wood and boards. The information not considered included the fact the fact that the Bells also witnessed the water standing in their home after the storm passed, and witnessed the wood and boards cup and warp after they began to dry. The information not considered included the fact that other identical boards inside the Bells home that did not get wet during the storm have not cupped or warped. It also included the fact that six independent contractors and an independent engineering firm had inspected the Bells' home for damages, took pictures and submitted the same to Standard Fire and Standard Fire approved their claim.

      The foregoing undisputed evidence suggests that Defendant Standard Fire created its own debatable reason in the instant case to deny the Bells' properly submitted claim for benefits, and when the Bells complained, they were threatened with retaliation. As stated above, Plaintiffs' counsel believes that Defendant Standard Fire has claims procedures in place that actually encourage the exact conduct set forth above. This belief is corroborated by the facts of an almost identical case that was pending in the Circuit Court for Montgomery County, Alabama, styled <u>William P. Sanders, et al., v. Standard Fire Insurance Company, et al</u>., CV-04-2928, and those facts are discussed in detail in the

statement of facts above and need not be duplicated here. As a result, the Bells have submitted more than enough evidence to require a factual determination by a jury as to whether Standard Fire created its own debatable reason to deny the Bells' claim. An insurer cannot create its own debatable reason to deny a claim and avoid bad faith punitive damage liability. *See* National Insurance Ass'n v. Sockwell, 2002 WL 399041; State Farm Fire & Cas. Co. v. Slade, 747 So.2d 293, 303-307.

### Conclusion

The Bells have submitted sufficient evidence to establish their breach of contract and bad faith claims against Standard Fire. Standard Fire is not entitled to judgment as a matter of law because there are genuine issues of material fact. Therefore, the Standard Fire's motion for summary judgment as to these causes of action should be denied.

/s/ Christopher E. Sanspree
CHRISTOPHER E. SANSPREE
Attorney for Plaintiffs

OF COUNSEL:

**BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.**
P. O. Box 4160
272 Commerce Street (36104)
Montgomery, Alabama 36103-4160
(334) 269-2343
(334) 954-7555 facsimile

## **CERTIFICATE OF SERVICE**

       I hereby certify that I have filed the original of the foregoing document in this Court with copies to be served upon all Defendants of record <u>as listed below</u> by placing a copy of same in the United States Mail, first class, postage prepaid on this the **6**[th] day of **March** 2006.

                                              **/s/ Christopher E. Sanspree**
                                              OF COUNSEL

Mr. Joel Isenberg
**Smith & Ely, L.L.P.**
2000A Southbridge Parkway; Suite 405
Birmingham, Alabama
(205) 802-2214
(205) 879-4445 (fax)