IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DONALD BELL; KATRINA BELL,  *
            *
  Plaintiffs,      *
            *
v.           *  Civil Action No. 2:05-cv-658-M
            *
TRAVELERS PROPERTY CASUALTY *
INSURANCE COMPANY,    *
            *
  Defendants,      *

## AFFIDAVIT OF KATRINA BELL

"My name is Katrina Bell and I am over the age of nineteen (19), and have personal knowledge of the following:

My husband and I purchased a 150-year old wooden home located in Furman, Alabama, at 9030 County Road 59 back in 2001 and began to completely restore the home. After completing the restoration, we purchased homeowner's insurance coverage from Defendant Standard Fire to cover the home and contents in case of a loss. On or about September 14, 2004, Hurricane Ivan damaged portions of our home and contents and we reported the loss to Defendant Standard Fire the very next day via telephone. My wife and I were instructed by Standard Fire to secure the damaged areas to prevent further damage until repairs could be made, which we did. On October 2, 2004, an adjuster employed by Insurance Claims Adjusters ("ICA"), acting on behalf of Standard Fire, inspected the damages caused to our home by Hurricane Ivan. While inspecting the home, the ICA adjuster instructed my wife and I to obtain repair estimates or "bids" from contractors regarding the damage caused by Hurricane Ivan. We told the ICA adjuster

that we had already obtained one repair estimate and were in the process of obtaining a second. We gave the ICA adjuster the repair estimate we had already obtained and the ICA adjuster instructed us to forward the second repair estimate to him once received. (A copy of the Repair Estimate is attached hereto as Exhibit "A"). On or about October 14, 2004, we obtained the second requested repair estimate or "bid" and sent the same to the ICA adjuster as instructed. I have attached the additional estimate as Exhibit "B". On or about November 23, 2004, we were informed by Standard Fire that the ICA adjuster handling our claim had been in a car accident and all of their submitted claim information had been lost. We were instructed to re-submit our repair estimates to Defendant Standard Fire, which we did. On November 28. 2004, another ICA adjuster inspected our home and told us that Standard Fire needed to have our home and foundation inspected by an engineering firm. We agreed, and on December 7, 2004, the engineering firm of Cain & Associates inspected our home and foundation and completed a detailed engineering report and provided a copy of the same to us and Standard Fire. We continued to submit additional independent repair estimates to Standard Fire, which are collectively attached as Exhibit "C". On or about December 17, 2004, the ICA adjuster informed us that our claim had been approved by Standard Fire and that we would be receiving a payment of approximately $200,000.00 in total benefits, which was approximately the amount listed on the ICA adjuster's report as well as our previously submitted repair estimates. We were pleased and began repairing our home.

However, instead of receiving the $200,000.00 benefit payment as promised, on December 22, 2004, we were contacted by Mr. David Gibbs, an employee of Standard Fire, and informed that he was now in charge of our claim and needed to personally re-

inspect our home with another engineering firm and contractor of his choosing because he didn't believe the cupping and warping of the boards within the home were caused by Hurricane Ivan. I informed Mr. Gibbs that all of the reported damage was caused by Hurricane Ivan because the boards were not cupped or warped before Hurricane Ivan, that my wife and I were in the home during the storm, that I witnessed the water coming in from the storm and soaking the damaged boards, that I witnessed the water standing in the home after the storm, and witnessed the boards cup and warp after they began to dry. I also reminded Mr. Gibbs that the other boards in the house that did not get wet during the storm have not cupped or warped. I also informed Mr. Gibbs that six independent contractors and an independent engineering firm had already inspected the home and had taken pictures and that Standard Fire had already approved their claim. Mr. Gibbs insisted that he be allowed to re-inspect the home with a contractor and engineering firm of his choosing. On December 26, 2004, Mr. Gibbs's contractor re-inspected the home. On December 27, 2004, Mr. Gibbs inspected our home himself. On January 19, 2005, Mr. Gibbs, along with the engineering firm he personally selected and his contractor all re-inspected the home together. On February 1, 2005, we received a check for $6,908.13 for the damage to the home and other damaged structures. We called Mr. Gibbs and informed him that the check for the damages to the home was grossly inadequate and requested additional payment. We reminded Mr. Gibbs that the estimated costs just to repair the damaged foundation was $6,500.00. Mr. Gibbs informed us that the claim was closed and stated that we would not be receiving any additional payments from Standard Fire. Mr. Gibbs informed us that based upon his review of his recently obtained engineering report, only part of our claim was covered because most of the damage to the

review of his recently obtained engineering report, only part of our claim was covered because most of the damage to the home was caused by upgrades in the heating and cooling units, not Hurricane Ivan. In response, my husband asked Mr. Gibbs if had given any consideration to the previously submitted engineering report and repair estimates to reach his decision. Mr. Gibbs replied that he had not and reminded me that he was now in charge of our claim and threatened that if we complained, he would come out to our home himself and collect all of their personal property we had listed as damaged because it now belonged to Standard Fire. Attached hereto as Exhibit "D" is a true and correct copy of personal notes of the above taken at the time the events took place.

The foregoing is true and accurate to the best of my knowledge."


*Katrina Bell*
**KATRINA BELL**


**STATE OF: ALABAMA )**

COUNTY OF: _____ )

I, the undersigned Notary Public in and for the State of Alabama at Large, hereby certify that the person that signed the foregoing, and who is known to me and who being by me first duly sworn, acknowledged before me on this day that being informed of the contents of the said document, they executed the same voluntarily on the day the same bears date.

SWORN to and SUBSCRIBED before me this the _6th_ day of _March_, 2006.


*Belinda J. Stokes*
NOTARY PUBLIC

My Commission Expires: _9-17-07_

# D 3 LAND SERVICES
## P. O. BOX 772
## ATMORE, AL 36504
## OFFICE (251) 446-7157
## CELL (251) 294-1232

## Bid Estimation/Invoice:  September 28, 2004

### Description

All work is due to intense weathering caused by
Hurricane Ivan:                                                    $141,750.00

----Removal, clean-up, and pruning of trees and
underbursh;

---Replant and refurbish existing
landscape;

---Replenish and backfill backside of acreage due to
excessive rain;

----Build, reconstruct, refurbish, and repaint fences and
gazebos;

---Repair, prepare, and paint house
and barn;

---Grade and final grade existing driveway due to excessive
weathering.

Materials                                                          $74,000.00

                                               Total:  $215,750.00

_____                    _John C. Davis, III_
Customer Signature                          John C. Davis, III

EXHIBIT
A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA,
NORTHERN DIVISION

DONALD BELL; KATRINA BELL,            *
                                      *
          Plaintiffs,                 *
                                      *
v.                                    *    Civil Action No. 2:05-cv-658-M
                                      *
TRAVELERS PROPERTY CASUALTY           *
INSURANCE COMPANY,                    *
                                      *
          Defendants,                 *

### AFFIDAVIT OF JEFF SCHOFIELD

"My name is Jeff Schofield and I am over the age of nineteen (19), and have personal knowledge of the following:

I am the owner of Schofield Contracting. After Hurricane Ivan, Don and Katrina Bell contacted me to assess the damage to their home located at 9030 County Road 59, Pine Apple, Alabama, 36471. On October 14, 2004, I inspected the 030 County Road 59, Pine Apple, Alabama, 36471 property. My assessment was limited to an estimate for repair of the home located on this property.

Attached to my affidavit as Exhibit "A" is a true and correct copy of the estimate to repair the home of Don and Katrina Bell given on October 14, 2004. This report is a business record maintained in the ordinary course of business and it accurately reflects my assessment of the subject property.

The foregoing is true and accurate to the best of my knowledge."



Jeff Schofield

STATE OF: ALABAMA )

COUNTY OF: Crenshaw          )

I, the undersigned Notary Public in and for the State of Alabama at Large, hereby certify that the person that signed the foregoing, and who is known to me and who being by me first duly sworn, acknowledged before me on this day that being informed of the contents of the said document, they executed the same voluntarily on the day the same bears date.

SWORN to and SUBSCRIBED before me this the _3rd_ day of _March_ , 2006

Becky Smith
NOTARY PUBLIC

My Commission Expires:____
MY COMMISSION EXPIRES DEC. 28, 2009

# Schofield Contracting

P O. Box 421
Luverne, Alabama 36049
(334) 670-2074
(334) 235-3575

Date: 10-14-04

Bid #SC:_____

Customer Name: Don Bell
Address: 9030 County Road 59
Furman, AL 36741

| Job Description | Cost | Total |
|---|---|---|
| The following is a bid to repair damage as a Result of Hurricane Ivan to Don Bell's home located at 9030 Co. Rd. 59 Furman, AL 36741. The bid includes labor and material. Please see the following pages for an itemization of labor and material. | | |
| | | |
| TOTAL COST | 185,250 | 00 |

EXHIBIT
A

| **Dwelling** | | **Other Structures** | |
|---|---|---|---|
| Paint outside | 6,850.00 | Dozier Work | 3,000.00 |
| Foundation | 6,500.00 | Fill Dirt | 5,200.00 |
| Roof | 4,900.00 | Drive way | 3,600.00 |
| Window | 3,600.00 | Rift Raft | 2,000.00 |
| Floors | 8,700.00 | Tree Removal | 3,600.00 |
| Installation | 4,200.00 | | $17,400.00 |
| Wiring | 3,600.00 | | |
| Lights | 2,600.00 | | |
| Paint inside | 5,600.00 | | |
| Fireplaces | 1,800.00 | | |
| Labor | 36,000.00 | | |
| Materials | 74,000.00 | | |
| Mildew Clean-up | 2,400.00 | | |
| Landscaping | 7,500.00 | | |
| | $168,250.00 | | |

**Total** $185,250.00

Dwelling
Detail Sheet

1. Foundation- $6,500.00
   *re-level house and check piers and beams

2. Roof- $4.900.00 (materials and labor)
   *take off existing roof and put on new

3. Windows and Doors- $3,600.00
   *re-align after leveling house (27 windows & 17 doors)

4. Insulation- $4,200.00 (materials and labor)
   * take out existing insulation in attic & under house and replace.

5. Wiring- $3,600.00
   *check all wiring in house due to re-leveling of house and check lights.

6. Lights- $2,600.00 (damaged fixtures)
   *Dining room & Parlor lights replaced

7. Paint (inside labor)- $5,600.00 (see rooms detail sheets)

8. Fireplaces- $1,800.00 (see rooms detail sheets)

9. Mildew Clean-up- $2,400.00 (upstairs and in attic)

10. Landscaping- $7,500.00
    *remove damaged landscaping & replace (includes material, planting & labor)

11. Paint outside of house- $6,850.00 (material & labor)
    • 5960 sq. '
    • 68 gals @ $30.00 = $2040.00
    • Caulk 8 cases @ 24.00= $192.00
    • Labor $4,618.00 includes washing- primer & 3 top coats- plus replace 8 boards
      damaged by cracking/splitting)


Total--    $168,250.00

## Other Structures
### Detail Sheet

1. <u>Dozier Work</u>- $3,000.00 (43 hrs @ 70.00/ hour rate)

2. <u>Fill Dirt</u>- $5,200.00 (35 loads @ $150.00/load)
   *To repair run off damage around structures

1. <u>Drive Way</u>- $3,600.00 (material & labor) run off damage
   *4 loads of top coat @$500.00/load= $2,000.00 plus
   *6 loads clay @ $150.00/load= $900.00 plus
   *10.5 hrs of tractor work @$65/hr = $700.00
   *Total= $3,600.00

2. <u>Rift Raft</u>- $2,000.00
   *4 loads @$500.00 a load= $2,000.00
   *Rift Raft is to hold run off damaged area after repaired

3. <u>Tree removal</u>- $3,600.00
   *to cut and remove all damaged trees

Total- $17,400.00

## Dining Room



18'

19' 5"

window

fireplace

window

| Item | Wood Surface | Surface Damaged | Material Cost | Wood Labor |
|------|--------------|-----------------|---------------|------------|
| Floor | 351 sq' | 351 sq' | $6,318.00 | — |
| Wall | 750 sq ' | 525 sq' | $9,450.00 | — |
| Ceiling | 351 sq' | 351 sq' | $6,318.00 | $5,143.00 |
|  | 1452 sq' | 1227 sq' | $22,086.00 | $5,143.00 |

* Wood- Heartpine @ $18.00 sq ' (1 1/4" X 6"X 20')

*Paint- 12 gals @ $32.00 = $408.00 (primer & 3 top coats)

* Labor to paint- $800.00 (Primer & 3 top coats)

*Fireplace- Re-point (outside and inside) $900.00 (labor & materials)

*Labor to re-finish floor $3.62 sq' X 351 sq'= $1,270.62

**Parlor Room**



| Item | Wood Surface | Surface Damaged | Material Cost | Wood Labor |
|---|---|---|---|---|
| Floor | 351 sq' | — | — | — |
| Wall | 750 sq ' | — | — | — |
| Ceiling | 351 sq' | 30 sq' | $542.00 | $1,080.00 |
|  | 1452 sq' | 30 sq' | $542.00 | $1,080.00 |

* Wood- Heartpine @ $18.00 sq ' (1 1/4" X 6"X 20')

*Paint- 12 gals @ $32.00 = $408.00 (primer & 3 top coats)

* Labor to paint- $800.00 (Primer & 3 top coats)

*Fireplace- Re-point (outside and inside) $900.00 (labor & materials)

*Labor to re-finish floor $3.62 sq' X 351 sq'= $1,270.62

*1 of 13*



**Hall (Down stairs)**

| Item | Wood Surface | Surface Damaged | Material Cost | Wood Labor |
|---|---|---|---|---|
| Floor | 280 sq' | — | $540.00 | $1,080.00 |
| Wall | 960 sq ' | 30 sq' | $540.00 | $1,080.00 |
| Ceiling | 280 sq' | 30 sq' | $540.00 | $1,080.00 |
| | 1520 sq' | 60 sq' | $1,080.00 | $2,160.00 |

* Wood- Heartpine @ $18.00 sq ' (1 1/4" X 6"X 20')

*Paint- 12 gals @ 32.00 = $408.00 (primer & 3 top coats)

* Labor to paint- $800.00 (Primer & 3 top coats)

*Labor to re-finish floor $3.62 sq' X 280 sq'= $1,013.60



Kitchen

10'

18'

Window

Door

Window

| Item | Wood Surface | Surface Damaged | Material Cost | Wood Labor |
|---|---|---|---|---|
| Floor | 180 sq' | 40 sq' | $720.00 | ----- |
| Wall | 560 sq ' | 20 sq' | $360.00 | ----- |
| Ceiling | 180 sq' | 100 sq' | $1,800.00 | $5,760.00 |
| | 920 sq' | 160 sq' | $2,880.00 | $5,760.00 |

* Wood- Heartpine @ $18.00 sq ' (1 1/4" X 6"X 20')

*Paint- 6 gals @ 32.00 = $192.00 (primer & 3 top coats)

* Labor to paint- $400.00 (Primer & 3 top coats)

*Labor to re-finish floor $3.62 sq' X 180 sq'= $651.60

9 of 15

Library (den)



| Item | Wood Surface | Surface Damaged | Material Cost | Wood Labor |
|------|------|------|------|------|
| Floor | 180 sq' | —— | —— | —— |
| Wall | 560 sq ' | —— | —— | —— |
| Ceiling | 180 sq' | —— | —— | —— |

* Floor– Heartpine

*Paint- 6 gals @ $32.00 = $192.00 (primer & 3 top coats)

* Labor to paint- $400.00 (Primer & 3 top coats)

*Labor to re-finish floor $3.62 sq' X 180 sq'= $651.60

Downstairs Bathroom
Wine Room (Butler's Pantry)



10'

Wine Room
Butler's Pantry

18'

Window

Downstairs Bathroom

Window

| Item | Wood Surface | Surface Damaged | Material Cost | Wood Labor |
|------|-------------|-----------------|---------------|------------|
| Floor | 180 sq' | ----- | ----- | ----- |
| Wall | 760 sq ' | ----- | ----- | ----- |
| Ceiling | 180 sq' | ----- | ----- | ----- |

* Floor- Heartpine

*Paint- 6 gals @ $32.00 = $192.00 (primer & 3 top coats)

* Labor to paint- $400.00 (Primer & 3 top coats)

*Labor to re-finish floor $3.62 sq' X 180 sq'= $651.60



10'

Hall (Upstairs)

window

walk-in closet

18'

HALL Upstairs

10'

| Item | Wood Surface | Surface Damaged | Material Cost | Wood Labor |
|---|---|---|---|---|
| Floor | 180 sq' | — | — | $2,160.00 |
| Wall | 740 sq ' | 60 sq' | $1,080.00 | — |
| Ceiling | 180 sq' | 180 sq' | $3,240.00 | $6,480.00 |
| | 1100 sq' | 240 sq' | $4,320.00 | $7,508.00 |

* Wood- Heartpine @ $18.00 sq ' (1 1/4" X 6"X 20')

*Paint- 12 gals @ 32.00 = $408.00 (primer & 3 top coats)

* Labor to paint- $800.00 (Primer & 3 top coats)

*Labor to re-finish floor $3.62 sq' X 180 sq'= $651.60

<u>Upstairs Bedroom–Right side (coming up stairs)</u>



| Item | Wood Surface | Surface Damaged | Material Cost | Wood Labor |
|------|------|------|------|------|
| Floor | 351 sq' | 351 sq' | $6,318.00 | ---- |
| Wall | 750 sq ' | 525 sq' | $9,450.00 | ---- |
| Ceiling | 351 sq' | 351 sq' | $6,318.00 | $5,143.00 |
|  | 1452 sq' | 1227 sq' | $22,086.00 | $5,143.00 |

* Wood- Heartpine @ $18.00 sq ' (1 1/4" X 6"X 20')

*Paint- 12 gals @ 32.00 = $408.00 (primer & 3 top coats)

* Labor to paint- $800.00 (Primer & 3 top coats)

*Labor to re-finish floor $3.62 sq' X 351 sq'= $1,270.62

<u>Upstairs Bedroom—Left side (coming up stairs)</u>



| Item | Wood Surface | Surface Damaged | Material Cost | Wood Labor |
|------|--------------|-----------------|---------------|------------|
| Floor | 351 sq' | 351 sq' | $6,318.00 | —— |
| Wall | 750 sq ' | 525 sq' | $9,450.00 | —— |
| Ceiling | 351 sq' | 351 sq' | $6,318.00 | $5,143.00 |
| | 1452 sq' | 1227 sq' | $22,086.00 | $5,143.00 |

* Wood- Heartpine @ $18.00 sq ' (1 1/4" X 6"X 20')

*Paint- 12 gals @ 32.00 = $408.00 (primer & 3 top coats)

* Labor to paint- $800.00 (Primer & 3 top coats)

*Labor to re-finish floor $3.62 sq' X 351 sq'= $1,270.62

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA,
NORTHERN DIVISION

DONALD BELL; KATRINA BELL,          *
                                    *
        Plaintiffs,                 *
                                    *
v.                                  *          Civil Action No. 2:05-cv-658-M
                                    *
TRAVELERS PROPERTY CASUALTY         *
INSURANCE COMPANY,                  *
                                    *
        Defendants,                 *

### AFFIDAVIT OF DOUGLAS FREE

"My name is Douglas Free and I am over the age of nineteen (19), and have personal knowledge of the following:

After Hurricane Ivan, Don and Katrina Bell contacted me to assess the damage to their home located at 9030 County Road 59, Pine Apple, Alabama, 36471. On or about December 10, 2004, I inspected the 9030 County Road 59, Pine Apple, Alabama, 36471 property. My assessment was limited to an estimate for repair of the home located on this property.

Attached to my affidavit as Exhibit "A" is a true and correct copy of the estimate to repair the home of Don and Katrina Bell given on December 10, 2004

The foregoing is true and accurate to the best of my knowledge."


EXHIBIT
C

Douglas Free

STATE OF: ALABAMA )

COUNTY OF: _Crenshaw_____ )

    I, the undersigned Notary Public in and for the State of Alabama at Large, hereby certify that the person that signed the foregoing, and who is known to me and who being by me first duly sworn, acknowledged before me on this day that being informed of the contents of the said document, they executed the same voluntarily on the day the same bears date.

    SWORN to and SUBSCRIBED before me this the _3rd_ day of _March_ 2006.

                              NOTARY PUBLIC

My Commission Expires: _11-22-08_

                    Notary Public, State of Alabama at Large
                    My Commission Expires: Nov. 22, 2008
                      Bonded Thru Notary Public Underwriters

# PROPOSAL

| | |
|---|---|
| PROPOSAL NO. | *1* |
| SHEET NO | *1* |
| DATE | *12/10/04* |

**PROPOSAL SUBMITTED TO:**

NAME
*DON BELL*

ADDRESS
*9030 Co. RD. 59*

CITY,STATE
*FURMAN, AL. 36741*

PHONE NO
*251-746-2609*

**WORK TO BE PERFORMED AT:**

ADDRESS
*SAME*

CITY. STATE

DATE OF PLANS

ARCHITECT

We hereby propose to furnish the materials and perform the labor necessary for the completion of

*THIS BID IS TO REPAIR DAMAGE TO DON BELL'S*

*HOUSE THAT RESULTED AS A RESULT OF*

*HURRICANE IVAN. THIS HOUSE IS LOCATED*

*AT 9030 CO. RD. 59 FURMAN, AL. 36741.*

*THIS BID INCLUDES LABOR AND MATERIAL.*

*ATTACHED SHEET SHOWS BREAK DOWN*

*OF LABOR AND MATERIAL*

All material is guaranteed to be as specified, and the above work to be performed in accordance with the drawings and specifications submitted for above work and completed in a substantial workmanlike manner for the sum of:

_____ Dollars (S_____).

with payments to be as follows

Any alteration or deviation from above specifications involving extra costs will be executed only upon written order, and will become an extra charge over and above the estimate. All agreements contingent upon strikes, accidents, or delays beyond our control.

Respectfully submitted *Douglas Free*

Per *Lic. # 1518*

Note - This proposal may be withdrawn by us if not accepted within *30* days.

## ACCEPTANCE OF PROPOSAL

The above prices, specifications and conditions are satisfactory and are hereby accepted. You are authorized to do the work as specified. Payments will be made as outlined above

SIGNATURE _____

DATE _____

SIGNATURE _____

*edens  9450*

**EXHIBIT**

**A**

## Detail Breakdown

| | |
|---|---:|
| Wiring | 4,150.00 |
| Paint outside | 6,650.00 |
| Dozier Work | 2,800.00 |
| Window | 3,850.00 |
| Drive way | 3,800.00 |
| Fireplaces | 1,950.00 |
| Foundation | 5,800.00 |
| Rift Raft | 4,600.00 |
| Installation | 4,900.00 |
| Fill Dirt | 5,600.00 |
| Landscaping | 8,400.00 |
| Materials | 91,750.00 |
| Roof | 5,100.00 |
| Tree Removal | 4,100.00 |
| Floors | 8,850.00 |
| Lights | 2,900.00 |
| Mildew Clean-up | 2,650.00 |
| Labor | 39,000.00 |
| Paint inside | 5,900.00 |
| | |
| Total | $212,750.00 |

# The Antique Wood Company

**Quotation**
**412008**

6301 Biscayne Blvd. Suite #212
Miami, FL 33138
Voice: 888-515-0886
Fax:  786-621-4289

Quote Date:  Dec 8, 2004

Page:  1

Sold to:
Kitrina Bell
P. O. Box 99
Furman, AL  36741

Job Address:
Bell Residence
9030 Country Rd. 59
Furman, AL  36741

Phone: 334-335-3101
Fax:

| Good Thru | Payment Terms | Shipping | Sales Rep |
|---|---|---|---|
| 1/ /05 | 50 % Down With Order 50% Prior to shipping | F.O.B. N. Troy, VT | HR |

| Quantity | Description | Unit Price | Extension |
|---|---|---|---|
| 1.00 | ANTIQUE HEART PINE | | |
| 4,000.00 | Antiq Heart Pine Flr TG - 1 1/4"x6"x20'0" | 22.00 | 88,000.00 |
| 1.00 | NOTE: Premium grade. No knots. Over 1" and no nail holes or checking | | |
| 1.00 | FREIGHT - Charges are an estimate based on 22,880 lbs. | 3,750.00 | 3,750.00 |
| | SHIPPING TIME: 4-5 Business days excluding weekends & holidays | | |
| | ORDER PROCESSING TIME: 6-8 weeks after receipt of Quote Acceptance Form and 50% deposit | | |

| | | |
|---|---|---|
| Subtotal | | 91,750.00 |
| Sales Tax | | |
| Freight | | |
| TOTAL | | 91,750.00 |



EXHIBIT

C

## Appalachian Woods, LLC

1240 Cold Springs Rd.
Stuarts Draft, VA 24477
(800) 333-7610  (540) 337-1801
Fax: (540) 337-1030

# Quote

| Date | Quote # |
|------|---------|
| 12/9/2004 | 1274 |

**Name / Address**

Katrina Bell
PO Box 99
Furmon, AL   36741

| | | | Alt. Phone |
|---|---|---|---|
| Customer Phone | 334-335-3101 | Fax | |

| Terms | FOB | Project | Est. Lead Time |
|-------|-----|---------|----------------|
| 50 % DPST/NET before | Origin | | 12 -16 weeks |

| Qty | Units | Description | Rate | Total |
|-----|-------|-------------|------|-------|
| 4,588 | Square Feet | Antique Heart Pine Flooring<br>Grade: #2<br>Face Width:  6"<br>Length: 20'<br>Thickness:  1.25"<br>Profile: Center Match T&G | 38.00 | 174,344.00 |

We look forward to helping you on this project

| | |
|---|---|
| **Subtotal** | $174,344.00 |
| **VA Sales Tax** | $0.00 |
| **Total** | $174,344.00 |

We require a 50% deposit at order placement with balance
due before shippment.  Unless special arrangements are
made, we have a no return policy and any inspection of
materials must be made before shippment.



EXHIBIT
C
tabbies'

Completed by clients .

The following is a timeline of actions taken since Ivan hit September 14 & 15, 2004.

9/15/04 am (Approx. 7 am): I called Travelers to make a claim of damage. The lady gave us claim #L5K6586. I explained I called first thing to get in line for service. She asked me to try to secure the damage that I could to help prevent further damage and we did to the best of our ability. She informed me Travelers protocol was that an assigned agent would call and come to inspect the house within a couple of days. We waited for days at the house with no power, water and no phone service waiting on an agent to come by.

9/20/04: We called Travelers back since we had not yet been contacted by an agent as was instructed by Travelers claim person. It was only then by our calling that we were told the claim had been turned over to your company, ICA, and that an agent would be contacting us at once. The agent assigned was Eric Ellerbe. Mr. Ellerbe never contacted us. We waited with no reply and then called back ICA'S claim office only to be told our claim had been re-assigned to Mr. Travis Cartwright. Mr. Cartwright came to our house for inspection on October 2, 2004. By this time, the house had sit damaged 17 days without even an agent to inspect it.

Mr. Cartwright was very nice and very through. He spent a considerable amount of time outside and inside photographing and taking detailed notes of damage. He instructed us to get bids on damage. We had one already and were in the process of getting a second.

10/7/04: We sent a fax to Mr Cartwright updating him that we should have the second bid soon. Also, that we were having to get a contractor from out of town (due to the amount of damage in our part of the state). On 10/14/04, we received the second bid.

10/18/04: We faxed Mr. Cartwright to call us regarding paperwork. We had been trying to get up with him by phone and could not reach him. We could only leave messages.

10/27/04: Faxed additional paperwork to Mr. Cartwright and called him to confirm he had received it. We were now 53 days from the morning I called to file a claim on 9/15/04.

11/21/04: Had not heard back from Mr. Cartwright and tried to call him. We could not get him. Faxed Mr. Cartwright regarding status.

11/23/04: Not having heard anything, we contacted ICA's office and was instructed that our claim had been assigned to yet a 3rd agent, yourself (Ronnie Greenhouse). We were then 67 days from the day we filed a claim with Travelers and we had not yet finalized paperwork and had been told we have a new agent who must look at the house yet again. Mr. Cartwright had been in an accident and all photos and information had been destroyed.

11/28/04: Mr. Greenhouse inspected the house (this is the second time it has been inspected).



EXHIBIT
D

11/30/04: Mr. Greenhouse said he would need an engineer to inspect the foundation. He called engineer and had their office contact us. I expressed to Mr. Greenhouse my concern of these endless delays after delays with no corrective action being taken on our house allowing continued damage to incur. The engineer's office set the appointment for Tuesday 12/7/04. I explained again my concerns of the delays.

12/2/04: I updated Mr. Greenhouse regarding the engineers office leaving a voice mail today telling us that an "important job" had come up and that they could not come Tuesday 12/7/04 and that maybe (no promise) that they would try to get there by week's end. Explained to Mr. Greenhouse, if this firm can't give an exact quick date- Let's get another one closer.

~12/7/04: Cain and Associates, engineers from Mobile spent entire day examining house.

~12/17/04: Ronnie Greenhouse sends approved claim into ICA who forwards the approved claim to Travelers.

~12/20/04: Travelers sends claim to their large claim adjuster, David Gibbs.

12/22/04: We were contacted by David Gibbs saying he needed to look at house and needed to bring a contractor in as well to look at house. I explained to Mr. Gibbs then that the house had been inspected twice by 2 different adjusters already and had 3 quotes from contractors. Also explained that an engineer had inspected house. All had taken pictures.

12/26/04: Daniel Engel, Gulf States Contractor, inspects house for Travelers.

12/27/04: David Gibbs calls stating he needs to look at house. While examining house, he states engineer reports does not show additional info he needs. Explained to Mr. Gibbs that we had shown the house enough. Also explained that this claim had been out for 104 days

1/6/05: David Gibbs had scheduled review of house again with engineers but had to be rescheduled.

1/19/05: David Gibbs, Engineers from Mississippi, Electrician, and Daniel Engel, Gulf States Contractor examine house again.

1/25/05: Received voice mail at 9:42 a.m. from Daniel Engel, Gulf States General Contractor, stating that David Gibbs (Travelers Claim Rep) asked him to call with the estimate that they had approved by Daniel and wanted to fax it to us.

△ - Travelers, David Gibbs,

1/6/05: David Gibbs had scheduled review of house again with engineers but had to be rescheduled.

1/19/05: David Gibbs (2nd visit), Engineers from Professional Inspection Consultants (PIC) {2$^{nd}$ group of engineers}, Danny Hamner, electrician, and Daniel Engel, Gulf States Contractor (2nd visit) examine house.

1/25/05: Received voice mail at 9:42 a.m. from Daniel Engel, Gulf States General Contractor, stating that David Gibbs (Travelers Claim Rep) asked him to call with the estimate that they had approved by Daniel and wanted to fax it to us

2/1/05: Received copies of reports and one check for 6,908 13:

> $2514.59 for house
> $4492.54 for other structures (chicken coup, fence repair, sprinkler system)

2/05 or 3/05: Call made to David Gibbs to discuss the lack of payment for Hurricane damage. He was unwilling to discuss any further

3/4/05: Received check for $30,410 00:

> $7,200.00 for additional living expenses
> $23,210.00 for personal property replacement and moving expenses

5/5/05: Conversation via phone with David Gibbs explaining that roofer had repaired roof and upon inspecting roof noted that wooden slates that are attached to the tin had been blown loose from the rafters and the only way to repair was to remove tin in those areas, repair and replace. Also explained that when sprinkler system was being repaired by electrician it was noted that the electrical surge had damaged the pump in the well David told me that they should call him and let him know what would be needed. Also, had a question about payment for moving van back to Furman and he said he would call me back when he had the information in front of him

5/6/05: Call received from David Gibbs stating that moving expense had already been reimbursed and I should have received an itemized statement of the breakdown of reimbursement He said that everything we had put as a personal loss and additional expenses had been reimbursed. He went further to add that the case had already been closed and that if he had to open the case again that he would come and collect the items we had listed as damaged since they belonged to Travelers. He said the decision was ours. I asked him about the electrician and the roofer calling him regarding the damages. He said those were "trivial" issues. He further said again that the decision was ours about whether we wanted him to open the case again but to understand that he would collect the items reported as damaged.

**Summary:**

Antebellum home was totally restored three years ago  Hurricane Ivan caused wind and water damage to the dwelling as well as other structures  Tin was pulled back on top of home causing water to go into walls of home and "buck" the boards and both fireplaces were leaking  It took 17 days for an agent (subcontracted out by Travelers to ICA) to come and inspect home.  Three contractor bids were turned in. Fifty-three days past from the first filing of a claim.  Agent was in wreck and lost paper work.  Another agent was assigned. Agent had to come back out and needed an engineer to inspect home  90 days after initial claim, the agent stated that the claim had been approved and sent to Travelers for a check to be issued.  Large claim agent from Travelers called and inspected home  Needed another engineer and contractor to look at home   Contractor came and said he would use other bids to do his bid "higher."  Travelers Agent, engineer, electrician, and contractor (again) came to look at house together

Opinion of engineer that bucking of boards was from changes not due to Hurricane Ivan. Did meter testing that showed no moisture in boards (why would there be moisture 4 months after damage?).

Our opinion is that Travelers Large Claim Agent was "shopping" bids to get what he wanted to pay  He used his contractor who he does business with to give the "winning bid." We believe he told his contractor what would be allowed to be reimbursed.  As a matter of record, contractor filed his bid 1/25/05 and the engineer filed his record 1/27/05 and faxed it 1/28/05—this was three days before the engineer gave his report.  Wouldn't the agent need to know what the engineer report findings were for the contractor to give the winning bid?  How would the contractor know what to put unless he had discussions with Travelers agent and engineers before hand especially when he told us he would use the other bids and make it higher?

*From the beginning Travelers Agent had a bully attitude + condescending manner of talking to you the customer."*